21-2047-cv
*Soukaneh v. Andrzejewski*

# In the
# United States Court of Appeals
# For the Second Circuit

---

August Term, 2022
Argued: October 28, 2022
Decided: August 12, 2024

Docket No. 21-2047

---

BASEL M. SOUKANEH,

*Plaintiff-Appellee,*

—v.—

NICHOLAS ANDRZEJEWSKI,

*Defendant-Appellant.*\*

---

Appeal from the United States District Court
for the District of Connecticut
No. 19-cv-1147, Janet Bond Arterton, *Judge.*

---

Before:    LYNCH, LEE, AND ROBINSON, *Circuit Judges.*

Defendant-Appellant Nicholas Andrzejewski, an officer of the Waterbury, Connecticut police department, appeals from the judgment of the United States District Court for the District of Connecticut (Arterton, *J.*) denying in part his

---

\* The Clerk of Court is respectfully directed to amend the official case caption accordingly.

motion for summary judgment on the grounds that his purported conduct was not shielded by qualified immunity. That conduct, as alleged by Plaintiff-Appellee Basel Soukaneh, is that in the course of a routine traffic stop, Andrzejewski unlawfully and violently handcuffed and detained Soukaneh in the back of a police vehicle for over half an hour and conducted a warrantless search of Soukaneh's vehicle after Soukaneh presented a facially valid firearms permit and disclosed that he possessed a firearm pursuant to the permit. On appeal, Andrzejewski argues we should reverse the district court's denial of qualified immunity because the presence of the lawfully owned firearm in the vehicle gave him the requisite probable cause to detain Soukaneh, search the interior of his car, and search his trunk.

Drawing all permissible factual inferences in Soukaneh's favor, as we must on summary judgment, we agree with the district court. The evidence supports the conclusion that Andrzejewski violated Soukaneh's Fourth Amendment rights to be free from unreasonable search and seizure when he detained Soukaneh in the manner, and for the length of time, that he did, and when he conducted the warrantless searches of Soukaneh's car and trunk. Andrzejewski is not entitled to qualified immunity for this alleged conduct and, accordingly, the district court properly denied his motion for summary judgment.

We therefore **AFFIRM** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

> JOSEPH A. MENGACCI (Daniel J. Foster, *on the brief*), Office of the Corporation Counsel, Waterbury, CT, *for Defendant-Appellant*.
>
> John R. Williams, New Haven, CT, *for Plaintiff-Appellee*.
>
> Michael T. Jean, Hadan W. Hatch, *for Amicus Curiae* National Rifle Association of America, Inc., *in support of Plaintiff-Appellee*.

EUNICE C. LEE, *Circuit Judge*:

Defendant-Appellant Nicholas Andrzejewski, an officer of the Waterbury, Connecticut police department, appeals from the judgment of the United States District Court for the District of Connecticut (Arterton, *J.*) denying in part his motion for summary judgment on the grounds that his purported conduct was not shielded by qualified immunity. The evidence, taken in the light most favorable to Plaintiff-Appellee Basel Soukaneh, would permit a reasonable jury to find that in the course of a routine traffic stop, Andrzejewski unlawfully and violently handcuffed and detained Soukaneh in the back of a police vehicle for over half an hour and conducted a warrantless search of Soukaneh's vehicle after Soukaneh presented a facially valid firearms permit and disclosed that he possessed a firearm pursuant to the permit. On appeal, Andrzejewski argues that we should reverse the district court's denial of qualified immunity because the presence of the lawfully owned firearm in the vehicle gave him the requisite probable cause to detain Soukaneh, search the interior of his car, and search his trunk.

Drawing all permissible factual inferences in Soukaneh's favor, as we must on summary judgment, we agree with the district court. The evidence would support a finding that Andrzejewski violated Soukaneh's Fourth Amendment

3

rights to be free from unreasonable search and seizure when he detained Soukaneh in the manner, and for the length of time, that he did, and when he conducted the warrantless searches of Soukaneh's car and trunk. Andrzejewski is not entitled to qualified immunity for such conduct and, accordingly, the district court properly denied his motion for summary judgment.

We therefore **AFFIRM** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    Facts[1]

At approximately 8:43 p.m. on November 12, 2018, Basel Soukaneh stopped his car with the engine running on the side of a street in Waterbury, Connecticut. Soukaneh's iPhone GPS, located in a holder mounted to the car's dashboard, was frozen, and he stopped his car to fix it. The area "was dark and [known as] a high crime area well known for prostitution, drug transactions and other criminal activity." Joint App'x at 9. Within seconds after Soukaneh stopped his car, Officer Nicholas Andrzejewski approached the vehicle, knocked on the driver's side

---

[1] Unless otherwise noted, the facts summarized here are undisputed for purposes of this appeal.

window, and according to Soukaneh, loudly demanded Soukaneh's driver's license. The interior vehicle light was on, so although the area was dark, Andrzejewski could see the activity inside of the car when he approached the window. As Soukaneh complied and handed his license over, he also provided Andrzejewski with a facially valid firearms permit. While doing so, Soukaneh also disclosed to Andrzejewski that, per the permit, he was in lawful possession of a pistol that was located in the driver's side door compartment.

Following that exchange, Andrzejewski ordered Soukaneh out of the vehicle. According to Soukaneh's description, Andrzejewski then violently "dragged [him] out of the car," pushed him to the ground, yelled and screamed at him, handcuffed him, and pat-searched his person, recovering neither a weapon nor contraband.[2] Joint App'x at 37. Andrzejewski then "shoved [Soukaneh] into the rear area of [Andrzejewski's police] cruiser," and left Soukaneh "bent over and partially on the floor of the vehicle." *Id.* at 38. Soukaneh remained "in that

---

[2] Soukaneh further states that in the course of the search, Andrzejewski took $320 and a flash drive from him. Andrzejewski denies that allegation, but for purposes of this appeal, we take the facts in the light most favorable to Soukaneh. In any event, the allegation is irrelevant to our resolution of the Fourth Amendment issues raised on appeal.

position, facing down and unable to see, until another police officer came along several minutes later and helped him sit up." *Id.* at 38–39.

Once the other officer repositioned Soukaneh in the cruiser, Soukaneh saw Andrzejewski search his "entire car, both front and rear," as well as the car's trunk. *Id.* at 39. After the search, Andrzejewski returned to the cruiser and kept Soukaneh handcuffed and detained in it for an additional half hour, during which time "a group of seven to ten police officers gathered." *Id.* At one point, Andrzejewski began writing on his onboard computer and turned to a fellow officer who had arrived at the scene and asked, "What should I write him up for?" *Id.* The other officer laughed and the sergeant, who had also since arrived, told Andrzejewski what to write.[3]

Both parties agree that at some unspecified point during Soukaneh's handcuffed detention while in the vehicle, Andrzejewski ran a check on Soukaneh's firearm permit and confirmed that the permit was validly held.[4]

---

[3] It is unclear from the record whether Soukaneh ever actually received a citation.

[4] It is unclear from the record when Andrzejewski determined that Soukaneh held a valid firearms license, and whether that determination occurred before, after, or during Andrzejewski's search of Soukaneh's car. Andrzejewski does not specify whether he ran the check on the firearm license before or after he searched Soukaneh's vehicle. *See*

6

Soukaneh was subsequently released.

### B.    Proceedings Below

On July 25, 2019, Soukaneh filed a complaint in the United States District Court for the District of Connecticut.  He principally alleged that Andrzejewski's actions deprived him of his Fourth Amendment right to be free from "unreasonable and warrantless arrest and/or detention," and "warrantless and unreasonable search and seizure of his person, vehicle and effects," and sought compensatory and punitive damages pursuant to 42 U.S.C. §§ 1983 and 1988.  Joint App'x at 2–3.  On December 31, 2020, Andrzejewski moved for partial summary judgment under Federal Rule of Civil Procedure 56(a), arguing that his actions were justified because he had reasonable suspicion and probable cause, or alternatively, that he was entitled to qualified immunity as to the claims asserted against him because if any rights were violated, they were not "clearly established."  *Id.* at 89.

On August 6, 2021, the district court granted Andrzejewski's motion for

---

*generally* Joint App'x at 10 (stating only that "[w]hile the plaintiff was inside the police car in handcuffs, Officer Andrzejewski ran a check through the Northwest Communication Center to ascertain whether the carry permit was valid").

summary judgment in part and denied it in part. *Soukaneh v. Andrzejewski*, No. 3:19-CV-1147 (JBA), 2021 WL 3475700 (D. Conn. Aug. 6, 2021). The district court granted Andrzejewski's motion for summary judgment with regard to the initial stop. It concluded that since "[Andrzejewski's] basis for stopping [Soukaneh's] vehicle was that the car was stopped at night in the roadway with the engine running in an area known for drugs and prostitution," it was reasonable for Andrzejewski to believe that Soukaneh was committing a traffic violation, "giving him reasonable suspicion to stop [Soukaneh], check his driver's license, and require him to step out of the car." *Id.* at *3. However, the district court denied summary judgment on the remaining issues related to (1) handcuffing and detaining Soukaneh in the police cruiser, (2) searching the interior of Soukaneh's car, and (3) searching the car's trunk. *Id.* at *3–7. The district court reasoned that Andrzejewski did not possess the requisite arguable probable cause to justify this conduct, explaining that a reasonable officer would not believe that Soukaneh was committing a crime, or "posed a meaningful threat of being 'armed *and* dangerous'" for merely disclosing the presence of the firearm and its accompanying permit. *Id.* at *6 (quoting *Knowles v. Iowa*, 525 U.S. 113, 118 (1998)). That was especially true in light of Soukaneh's compliant and non-threatening

8

behavior, and "the absence of any articulable reason for Defendant to believe the [gun] permit was counterfeit or otherwise invalid." *Id.* at *4. The district court concluded that "[a]ny contrary holding would make it practically impossible for the lawful owner of a firearm to maintain a Fourth Amendment right to privacy in his or her automobile." *Id.* at *6. Accordingly, the district court determined that Andrzejewski was not entitled to qualified immunity on these issues, and thus denied Andrzejewski's motion for summary judgment in remaining part. *Id.* at *5–7.

Andrzejewski timely appealed the district court's rejection of his qualified immunity defense.

## II.  LEGAL STANDARDS

### A.  Jurisdiction and Standard of Review

This Court typically does not have appellate jurisdiction over a denial of summary judgment. *See Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014) ("An order denying a motion for summary judgment is generally not a final decision within the meaning of [28 U.S.C.] § 1291 and is thus generally not immediately appealable."); *see also Golino v. City of New Haven*, 950 F.2d 864, 868 (2d Cir. 1991) (same proposition). Under the collateral order doctrine, however, a district court's

denial of a summary judgment motion is appealable when the decision denies qualified immunity. *See Plumhoff*, 572 U.S. at 771 (noting that the rule requiring a final judgment for appellate jurisdiction "does not apply when the summary judgment motion is based on a claim of qualified immunity"); *Washington v. Napolitano*, 29 F.4th 93, 103 (2d Cir. 2022) (same proposition). That is because "[q]ualified immunity 'is an *immunity from suit* rather than a mere defense to liability,' and therefore its denial is immediately appealable under the collateral order doctrine." *Reyes v. Fischer*, 934 F.3d 97, 102 (2d Cir. 2019) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). This Court has jurisdiction over a denial of qualified immunity on a summary judgment motion only to the extent that it was denied as a matter of law. *Terebesi v. Torreso*, 764 F.3d 217, 229 (2d Cir. 2014).

We ordinarily review a district court's summary judgment ruling *de novo* to determine whether the evidentiary submissions "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Reyes*, 934 F.3d at 103. But on an interlocutory appeal from a denial of qualified immunity, this Court's jurisdiction is limited to whether the immunity defense has been established as a matter of law based "on stipulated facts, or on the facts that the plaintiff alleges are true, or on

the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Washington*, 29 F.4th at 103 (quoting *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996)).

Here, Andrzejewski has not disputed—and, for the purposes of appealing the denial of qualified immunity, must be considered to have accepted—Soukaneh's version of the facts, to give this Court proper jurisdiction over his appeal. *See Jok v. City of Burlington*, 96 F.4th 291, 295 (2d Cir. 2024) (explaining that in order to immediately appeal the denial of qualified immunity, appellant must accept or stipulate to plaintiff's version of the material facts). Further, while no material facts here are contested, the evidence must be viewed in the light most favorable to Soukaneh, and all reasonable inferences must be drawn in his favor. *See Washington*, 29 F.4th at 99.

## B. Qualified Immunity

Qualified immunity shields officials "when [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (internal quotation marks omitted). "The Supreme Court has instructed that '[q]ualified immunity balances two important interests—the need to hold public officials accountable

when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020) (alteration in original) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

In deciding whether an official is entitled to qualified immunity, this Court conducts a two-pronged inquiry, asking whether "the facts shown [i] 'make out a violation of a constitutional right,' and [ii] 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Winfield v. Trottier*, 710 F.3d 49, 53 (2d Cir. 2013) (alteration in original) (quoting *Pearson*, 555 U.S. at 232). The Supreme Court has left it up to courts to decide the order in which to approach those questions. *See Pearson*, 555 U.S. at 236 (holding that, while there is still a two-pronged test, courts of appeals can use their discretion as to which prong to address first).

"A right is 'clearly established' when 'the contours of the right are sufficiently clear that a reasonable official would understand that what [they are] doing violates that right.'" *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011) (alterations omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[I]f reasonable officers could disagree on the legality of the action at issue in its

particular factual context, the officer is entitled to qualified immunity." *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022) (internal quotation marks omitted). The party seeking summary judgment on the basis of qualified immunity bears the burden of proof for both queries. *See Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

## III. DISCUSSION

It is an important principle of our legal system that law enforcement officers must have the necessary discretion to perform their required duties. That principle must be balanced, however, with a core tenet enshrined in the Fourth Amendment—the right to be free from unreasonable search and seizure. Thus, it has long been the "essential purpose of the proscriptions in the Fourth Amendment [] to impose a standard of 'reasonableness' upon the exercise of discretion by . . . law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions.'" *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978)). Accordingly, we judge "the permissibility of a particular law enforcement practice . . . by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654.

13

On appeal, Andrzejewski argues that the district court erred by denying his motion for summary judgment as to his handcuffed detention of Soukaneh in Andrzejewski's police car, search of the interior of Soukaneh's car, and search of the trunk of Soukaneh's car, because he acted reasonably within the ambit of the Fourth Amendment.[5]  To determine whether Andrzejewski is entitled to qualified immunity for those actions, we must consider whether Andrzejewski violated Soukaneh's constitutional rights against unlawful search and seizure, and if so, whether the violated rights were clearly established at that time.

On the undisputed facts before us, we conclude that Soukaneh has sufficiently alleged a violation of his constitutional rights and confirm that there is no defense of qualified immunity available to Andrzejewski for purposes of summary judgment.  For each issue, we first address the specific violation of Soukaneh's constitutional rights, and follow with an explanation of how that right is clearly established in the case law of the Supreme Court and this Circuit.

---

[5] Soukaneh does not challenge on appeal the district court's partial grant of qualified immunity as to the initial stop.  Thus, that issue is not before this Court for review, and we do not comment on the district court's reasoning as to that issue.

14

### A.    Soukaneh's Detention

Andrzejewski first argues that he did not violate Soukaneh's constitutional rights by handcuffing and detaining him in the police cruiser for over half an hour because the detention should be "governed by the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968)," and Andrzejewski possessed reasonable suspicion of criminal activity to make a lawful "*Terry* stop."    Appellant's Br. at 9–10. Alternatively, Andrzejewski contends that even if the detention constituted an arrest, he possessed the requisite probable cause based on Soukaneh's possession of a gun, irrespective of the facially valid firearms permit.    We disagree, however, that this was a *Terry* stop requiring only reasonable suspicion, because the facts before us demonstrate that Soukaneh's detention was a *de facto* arrest for which probable cause was required but lacking.    We further conclude that the detention violated Soukaneh's clearly established rights.

### 1.

*Terry* stops are lawful custodial interrogations that do not rise to the level of an arrest and are justified when an officer has "reasonable suspicion to believe that criminal activity has occurred or is about to occur."    *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995) (internal quotation marks omitted); *see also Terry*, 392 U.S. at

26–27.  "[R]easonable suspicion demands . . . 'less than is necessary for probable cause,'" and "is satisfied as long as authorities can point to 'specific and articulable facts which, taken together with rational inferences from those facts,' . . . provide a 'particularized and objective basis for suspecting legal wrongdoing.'"  *United States v. Patterson*, 25 F.4th 123, 135–36 (2d Cir. 2022) (first quoting *Kansas v. Glover*, 589 U.S. 376, 380 (2020); then quoting *Terry*, 392 U.S. at 21; and then quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  Andrzejewski contends that "[a]s soon as he learned that [Soukaneh] had a gun and a facially valid yet unconfirmed pistol permit, [Andrzejewski's] reasonable suspicion of criminal activity had fully developed."  Appellant's Br. at 14.

As a threshold matter, Andrzejewski has waived the argument that Soukaneh's detention required only reasonable suspicion because his counsel conceded at oral argument before the district court that the detention went beyond a *Terry* stop and required probable cause.  *See United States v. Fahey*, 510 F.2d 302, 305 (2d Cir. 1974) ("Appellant cannot now raise on appeal a point he conceded below[.]").  Andrzejewski's counsel specifically acknowledged that Andrzejewski needed probable cause to detain Soukaneh once Soukaneh had been removed from the car and the protective pat down revealed no weapon or other item of a

16

dangerous or criminal nature:

> THE COURT: So once the defendant takes the plaintiff out of the car, does a protective pat-down search, finds nothing, no further weapons, nothing of a criminal nature, what is your view as to the means of detention being used thereafter?
>
> [ANDRZEJEWSKI'S COUNSEL]: So I believe with the—what her Honor is referring to is we're beyond a Terry stop.
>
> THE COURT: Correct.
>
> [ANDRZEJEWSKI'S COUNSEL]: So *we acknowledge that we are beyond the Terry stop* and what would be permissible. At this juncture, it is our permission [sic] that there is now probable cause until the gun permit is deemed valid, probable cause based upon the presence of a weapon to search the vehicle and the trunk.

Transcript of Oral Argument at 6:11–24, *Soukaneh v. Andrzejewski*, No. 3:19-CV-1147 (JBA) (D. Conn. Sept. 17, 2021), ECF No. 33 (emphasis added). When asked about this colloquy at oral argument on appeal, Andrzejewski's counsel maintained that position, and in our Circuit, parties are "bound by concessions made by their counsel at oral argument." *Dorce v. City of New York*, 2 F.4th 82, 102 (2d Cir. 2021).

Andrzejewski argues that regardless of whether his actions passed the bounds of a *Terry* stop, they were justified because he had both "a reasonable suspicion of possible criminal activity" and "*probable cause* to detain [Soukaneh]

and search his person and his vehicle" once he was made aware of the presence of a gun in the vehicle—even absent any articulable basis to question the permit's validity.  Appellant's Br. at 14 (emphasis added).  We disagree because the officer's actions here exceeded the limitations of a *Terry* stop, and there was no probable cause to justify an arrest.

To begin, we agree with Andrzejewski's counsels' oral representations in the district court and on appeal that his conduct could not be justified as a valid *Terry* stop.  That is because, as correctly held by the district court, Andrzejewski's handcuffing and prolonged detention of Soukaneh went past the contours of a *Terry* stop and stepped into the territory of a *de facto* arrest.  *See Soukaneh*, 2021 WL 3475700, at *3–4.  Here, even if Andrzejewski "properly initiated" contact with Soukaneh, either based on a purported traffic violation or as a proper consensual encounter, and even accepting, *arguendo*, that his removal of Soukaneh from the car was temporarily permissible after he learned there was a gun in the vehicle within Soukaneh's reach[6]—an investigatory stop nonetheless "may ripen into a *de*

---

[6] We recognize that, if the traffic stop itself was valid, Andrzejewski may have "had a basis for asking [Soukaneh] to step out of the car."  *United States v. Hussain*, 835 F.3d 307, 314 (2d Cir. 2016); *see also Knowles v. Iowa*, 525 U.S. 113, 117–18 (1998) (noting that "the

*facto* arrest," which then "must be based on probable cause." *United States v. Fiseku*, 915 F.3d 863, 870 (2d Cir. 2018) (internal quotation marks omitted); *see also United States v. Sharpe*, 470 U.S. 675, 685 (1985) (acknowledging that at some point an investigative stop can transform into a *de facto* arrest and that this determination must consider the "law enforcement purposes to be served by the stop" and "the time reasonably needed to effectuate those purposes").

Analysis of the relevant factors confirms that the detention here constituted a *de facto* arrest. In determining whether a *Terry* stop is so intrusive as to become a *de facto* arrest, this Court considers:

> (1) the length of time involved in the stop; (2) its public or private setting; (3) the number of participating law enforcement officers; (4) the risk of danger presented by the person stopped; and (5) the display or use of physical force against the person stopped, including firearms, handcuffs, and leg irons.

*Fiseku*, 915 F.3d at 870 (quoting *United States v. Newton*, 369 F.3d 659, 674 (2d Cir. 2004)). While "[n]o one of these factors is determinative," we have held that "to satisfy the reasonableness standard, officers conducting stops on less than

concern for officer safety" exists even "in the case of a routine traffic stop"). But, as discussed *infra*, that alone would not provide the probable cause necessary to justify the *de facto* arrest that ensued.

probable cause must employ 'the least intrusive means reasonably available' to effect their legitimate investigative purposes." *Newton*, 369 F.3d at 674 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion)).

The present case satisfies nearly all of the *de facto* arrest factors. First, Andrzejewski left Soukaneh detained in the police cruiser for approximately 30 minutes *after* the search of the car had concluded. The record is unclear about the sequence of Andrzejewski's actions and exactly how long Soukaneh was detained. But it is a reasonable inference based on the record that Soukaneh remained detained for longer than the time it took Andrzejewski to "address [any] traffic violation that warranted the stop," "attend to related safety concerns," or even confirm the validity of the firearms permit if he had reason to question its validity. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). That is because Andrzejewski (1) does not refute Soukaneh's assertions that he detained Soukaneh in the cruiser for "far longer than" the length of time it took to confirm that Soukaneh possessed a valid pistol permit, Joint App'x at 36, and "left [Soukaneh] sitting handcuffed in the squad car for another half hour" after the search of the entire car and trunk had ended, *id*. at 39; (2) does not provide an estimate for how long the license check took as a means of providing a possible alternate justification for the length of the

detention; and (3) performed wide-sweeping searches of the vehicle. *See Rodriguez*, 575 U.S. at 354 (underscoring that the scope of a detention in the context of a traffic or investigatory stop must be "carefully tailored to its underlying justification," *and* that "it is appropriate to examine whether the police diligently pursued the investigation") (alterations and internal quotation marks omitted).

Second, while Andrzejewski was the only police officer who handcuffed and placed Soukaneh in the cruiser, seven to ten officers soon arrived and witnessed the duration of Soukaneh's detention. *Cf. Patterson*, 25 F.4th at 144 (determining, in a case where two individuals were detained by four officers, that having police officers outnumber suspects "only modestly" may be a reasonable protective measure that does not necessarily manifest a *de facto* arrest).

Third, regarding the risk of danger, as we explain more fully below, Soukaneh complied with Andrzejewski's requests and presented his facially valid firearms license immediately before he disclosed the presence and location of the gun. Soukaneh's choice to volunteer that information unprompted cuts against a reasonable officer finding that Soukaneh posed a heightened risk of danger. Whether a suspect was compliant or, conversely, exhibited suspicious behavior is a relevant factor when assessing reasonableness—the touchstone of the Fourth

Amendment analysis. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 268, 270–71 (2000) (holding that a *Terry* frisk predicated on an anonymous tip that someone matching J.L.'s description was carrying a gun was not supported by reasonable suspicion because the tip lacked sufficient "indicia of reliability" as to the illegality of J.L.'s conduct, and the officers never observed any furtive movement or otherwise suspicious behavior from J.L. before *Terry* frisking him). Indeed, many of the instances in which we have found a reasonable apprehension of danger have been cases where the driver was uncooperative and seemingly attempting to conceal the presence of a weapon. *See United States v. Muhammad*, 463 F.3d 115, 123–24 (2006) (noting that a lack of cooperation alone is insufficient for a *Terry* frisk, but that in combination with a driver's suspicious and evasive behavior, and known history of fleeing, justified the *Terry* frisk of a bag within the driver's reach); *see also United States v. Paulino*, 850 F.2d 93, 98 (2d Cir. 1988) (holding that "furtive movement provided a legal basis for the protective search").

Fourth, and perhaps most importantly, we consider the display or use of physical force against the person stopped. Andrzejewski "dragged" Soukaneh out of the car and handcuffed him before "shov[ing]" him in the cruiser and leaving Soukaneh in handcuffs for the remainder of his detention. Joint App'x at 37–38.

"Handcuffs are generally recognized as a hallmark of a formal arrest." *Newton*, 369 F.3d at 676 (citing *New York v. Quarles*, 467 U.S. 649, 655 (1984)); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.") (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).  Under these circumstances, Andrzejewski's prolonged detention of Soukaneh in the patrol car constituted an arrest for which probable cause was required.

**2.**

More demanding than reasonable suspicion, "[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007); *see also Illinois v. Gates*, 462 U.S. 213, 230–38 (1983) (explaining that probable cause determinations should be made by assessing the totality of the circumstances).

In his principal brief, Andrzejewski alleges no other basis for suspicion of criminal activity after the stop and pat down beyond the presence of the licensed

gun.[7]  Thus, in order for Andrzejewski to have probable cause to arrest, he would have had to possess evidence sufficient to warrant a person of reasonable caution in believing that Soukaneh unlawfully possessed the gun, presumably in violation of state law making it a crime to possess a gun inside a vehicle without a permit.  *See* Conn. Gen. Stat. § 29-38(a) ("Any person who knowingly has, in any vehicle . . . any weapon, any pistol or revolver for which a proper permit has not been issued . . . shall be guilty of a class D felony[.]").  According to Andrzejewski's argument on appeal, he detained Soukaneh to verify the validity of the gun permit—ostensibly to determine whether Soukaneh possessed the gun in violation of the law.  In response, Soukaneh argues that "no reasonable police officer could

---

[7] After raising the argument on appeal for the first time in his reply brief, Andrzejewski asserted at oral argument that in addition to Soukaneh's possession of a firearm, his presence in a vehicle with the engine running in a high crime area known for drug transactions permitted Andrzejewski's actions.  Putting aside the fact that this is a shift in Andrzejewski's theory to justify Soukaneh's detention, this context also does not provide Andrzejewski with the requisite probable cause necessary to justify an arrest.  While it is true that an area's characteristics may be a relevant factor in a totality-of-the-circumstances analysis for assessing the reasonableness of an officer's actions, a location's reputation as a high crime area alone is typically not enough to suggest reasonable suspicion, let alone probable cause.  *See Holeman v. City of New London*, 425 F.3d 184, 190 (2d Cir. 2005) (stating that driving in a circuitous route in a high crime area at 4:30 a.m. was not enough, standing alone, to support reasonable suspicion).  Here, Andrzejewski identifies, and we have found, nothing else in the record that suggests anything unlawful about Soukaneh's licensed possession of the gun.

entertain" the belief that "a facially valid firearms permit [i]s meaningless unless and until the issuing authority confirm[s] that it [i]s legitimate." Appellee's Br. at 12. Absent something indicating to the officer that the permit might not have been facially valid, or some other evidence of criminality or danger to the officer, we agree with Soukaneh. Accordingly, we conclude that Andrzejewski did not have the requisite probable cause to justify Soukaneh's detention simply because he was notified of the presence of a gun and presented with the accompanying permit.

The desire to confirm the legitimacy of the facially valid firearms permit that Soukaneh presented did not—with nothing more—provide Andrzejewski with probable cause for the half-hour or longer handcuffed detention that occurred. It is uncontested that Soukaneh presented Andrzejewski with a gun license, the legitimacy of which Andrzejewski himself admits he had no reason to question. Moreover, Andrzejewski concedes that he was informed of the facially valid license before Soukaneh told him that he had a gun and specified its location. Andrzejewski does not allege that the permit appeared abnormal in any fashion or that Soukaneh engaged in any suspicious or threatening behavior. On the facts before us, Andrzejewski does not provide an articulable reason why he, or any other reasonable officer, could conclude that there was probable cause to believe

that Soukaneh possessed his firearm unlawfully in violation of Section 29-38(a). To find otherwise would consign those validly carrying firearms pursuant to a license to automatic detention because it would effectively presume that gun permits are invalid until proven valid, or that lawfully owned guns are *per se* contraband until proven otherwise. Such a finding would effectively render armed individuals' Fourth Amendment rights meaningless when they are lawfully carrying firearms.[8] *See J.L.*, 529 U.S. at 272–73 (refusing to create a "firearm exception" to justify a *Terry* stop and frisk to confirm the legality of a gun).[9] Our sister circuits that have confronted this issue agree that we cannot

---

[8] The potential effect of Andrzejewski's argument on the rights guaranteed by the Second Amendment is worth noting, notwithstanding that those rights are not in dispute for purposes of this appeal. While not every lawful possession of a firearm will trigger Second Amendment protection, some will. Regardless of whether the Second Amendment applies, however, individuals lawfully possessing a weapon should not be penalized by having a diminishment of their Fourth Amendment rights. *See, e.g.*, *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015) ("To allow stops in this setting would effectively eliminate protections for lawfully armed persons." (internal quotation marks omitted)); *see also* Br. for National Rifle Association as Amicus Curiae at 12 (highlighting that the burden is generally on law enforcement to show that a permit is invalid, and that the possession of a facially valid permit, absent more, is not enough for a *Terry* stop).

[9] In *J.L.*, the Supreme Court stated that the safety of the police and public does not justify a firearm exception to the general rule barring investigatory stops and frisks on anonymous tips of unlawful gun possession. 529 U.S. at 269, 272–73 ("[A]n automatic firearm exception to our established reliability analysis [for reasonable suspicion] would

assume reasonable suspicion whenever someone possesses a gun in permit-to-carry and permit-less states.[10]  And if the presence of a licensed gun cannot *per se* establish reasonable suspicion, then it certainly cannot establish probable cause.

For those reasons and on this record, Andrzejewski did not have probable cause to handcuff and detain Soukaneh in his police cruiser for at least half an hour based on Soukaneh's disclosure of a gun and facially valid permit, and thus, he violated Soukaneh's Fourth Amendment right to be free from unreasonable and warrantless arrest and detention.

---

rove too far.").  While the facts here may differ, the principle stated by the Court is transferrable.

[10] S*ee, e.g.*, *United States v. Lewis*, 672 F.3d 232, 240 (3d Cir. 2012) (holding that where it "is lawful for certain individuals . . . to carry a firearm provided that a license is obtained," "possession of a firearm . . . , in and of itself, does not provide officers with reasonable suspicion to conduct a *Terry* stop"); *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013) (finding that the driver's "lawful display of his lawfully possessed firearm [could not] be the justification for [his] detention," even in a high crime area); *Northrup*, 785 F.3d at 1132, 1132–33 (holding that an individual carrying a firearm in a state that allows open carry cannot be presumptively suspicious to justify a stop and frisk); *United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993) ("In a state such as New Mexico, which permits persons to lawfully carry firearms, the government's argument [that the presence of a firearm justifies detention] would effectively eliminate Fourth Amendment protections for lawfully armed persons."); *see also United States v. Brown*, 925 F.3d 1150, 1154 (9th Cir. 2019) (holding that even where a license is required for concealed carry, a tip that someone is carrying a gun creates "a very weak inference that" it is unlicensed and unlawful).

**3.**

Alternatively, Andrzejewski claims that even if he did not have the requisite probable cause, Soukaneh's right to be free from the unlawful detention was not clearly established under the existing case law, so that a reasonable officer in Andrzejewski's place could not have known that his behavior was unlawful. Given the prolonged length and nature of the handcuffed detention inside the patrol car, and in the absence of any suspicious or non-compliant behavior, we disagree. Fourth Amendment search and seizure case law existing at the time of Andrzejewski's actions certainly provided guidance on how a reasonable officer should proceed in this context.

The analysis under this element "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Colvin v. Keen*, 900 F.3d 63, 75 (2d Cir. 2018) (quoting *Pearson*, 555 U.S. at 244). To assess these considerations, we ask: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Matusick v.*

28

*Erie Cnty. Water Auth.*, 757 F.3d 31, 60 (2d Cir. 2014) (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993)).

We apply an "arguable" probable cause standard to assess the officer's actions vis-à-vis any rights at issue. Arguable probable cause "exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir. 1997) (internal quotation marks omitted); *see also Rupp v. Buffalo*, 91 F.4th 623, 642 (2d Cir. 2024) ("[Q]ualified immunity is available where officers of reasonable competence could disagree on whether the probable cause test was met, *i.e.*, where the existence of probable cause for an arrest was at least reasonable and arguable, even if mistaken." (internal citations and quotation marks omitted)).

Andrzejewski argues that due to the "absence of case law on point from this Circuit [or] the Supreme Court, a reasonable officer could believe that he or she was justified in detaining an armed individual, who had been lawfully pulled over for a traffic violation, long enough to confirm that the individual had a valid pistol permit." Appellant's Br. at 9. But Andrzejewski's characterization of Soukaneh's detention neglects to account for its forcible nature and protracted length, as well

29

as the admitted absence of reason for questioning the permit's facial validity in the first instance. Additionally, Andrzejewski makes no argument whatsoever that the detention was *only* as long and as intrusive as reasonably necessary to confirm the validity of the gun permit. Indeed, the absence of any evidence or assertions about the timing or duration of the license check is conspicuous. Accordingly, we must assess whether it was clearly established that Andrzejewski violated Soukaneh's Fourth Amendment rights when he detained Soukaneh in handcuffs, in the back of a police cruiser, for over half an hour, in the context of a traffic stop, and when: (1) Soukaneh was compliant with the officer's requests, (2) Soukaneh engaged in no suspicious or evasive behavior, (3) Soukaneh volunteered that he held a facially valid firearms license and disclosed the presence and location of a gun in his possession pursuant to that license, and (4) Andrzejewski provided no other basis for a finding of probable cause as to any other offense to support the ensuing intrusions.

Although Andrzejewski is correct that there is no factual twin for this case in the Second Circuit or Supreme Court, the standard for the clear establishment of a right is not so exacting. While "clearly established law should not be defined at a high level of generality for purposes of qualified immunity analysis," "it is

error to demand [the] specificity" of a factual twin. *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 29–30 (2d Cir. 2023) (internal quotation marks omitted). Indeed, this Court has held that "the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established" because "the absence of a reported case with similar facts [could] demonstrate[] nothing more than widespread compliance with the well-recognized applications of the right at issue on the part of government actors." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377–78 (2009) ("The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that the easiest cases don't even arise." (alterations and internal quotation marks omitted)). Thus, "[f]or a right to be clearly established for purposes of qualified immunity, it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) (internal quotation marks omitted); *see also City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) ("[T]he clearly established right must be defined with specificity.").

31

We conclude that the ubiquity of Fourth Amendment protections established in the plethora of traffic stop cases put Andrzejewski on notice of the protected rights at issue during his *de facto* arrest of Soukaneh in the absence of probable cause. We have made clear that "a constitutional right to be free from arrest without probable cause, as well as a constitutional right to be free from unreasonably prolonged or intrusive investigative detention" are themselves the clearly established rights that justify the denial of qualified immunity. *Gilles v. Repicky*, 511 F.3d 239, 247 (2d Cir. 2007) (denying qualified immunity where the defendant officer had "not demonstrated that it was objectively reasonable for him to believe that his conduct," including a prolonged investigative detention, "did not violate these [clearly established Fourth Amendment] rights"). The logic of *Gilles* applies with equal force to the facts before us. That is because here (1) Andrzejewski did not, for the reasons outlined, have even arguable probable cause to handcuff, detain, and conduct a *de facto* arrest of Soukaneh for the prolonged period at issue, and (2) it is clearly established in our case law that there must be probable cause of a crime to permit an intrusion of this kind on a person's freedom.

It "has long been the law that 'an investigative detention must be temporary

and last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* at

245 (quoting *Royer*, 460 U.S. at 500). A reasonable officer in Andrzejewski's

position who had a desire to check the validity of an individual's licensing

information would know that the circumstances here could barely justify a *Terry*

stop, let alone a prolonged, handcuffed detention. *See United States v. Gomez*, 877

F.3d 76, 88–89 (2d Cir. 2017) ("[O]fficers may conduct certain ordinary inquiries

related to a traffic stop, such as checking the driver's license . . . without

independent reasonable suspicion of other crimes. However, tasks not related to

the traffic mission . . . are unlawful if they prolong the stop absent independent

reasonable suspicion." (internal citations and quotation marks omitted)). Even in

the absence of a case in the specific context of verifying a gun permit during a

traffic stop, a reasonable officer in Andrzejewski's position would know that this

type of detention was unwarranted where there was no reasonable or asserted

basis for questioning the legitimacy of the gun permit, where Soukaneh did not

engage in any suspicious or non-compliant behavior, and where there were no

facts to support the inference that he was engaging in criminal activity. This is not

a case in which there were circumstances, however insufficient to establish

probable cause, that might suggest to a reasonable officer that there was something

illegal about a suspect's possession of a weapon.  Here, there was literally no reason to believe that Soukaneh's possession of the gun—whose presence Soukaneh freely acknowledged, and for which he provided a facially valid permit that Andrzejewski had no reason whatsoever to believe was forged or had been revoked—was unlawful.

Moreover, it is well-established that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Gilles*, 511 F.3d at 245 (quoting *Royer*, 460 U.S. at 500).  However, the record here, taken in the light most favorable to Soukaneh, supports a finding that the detention continued far longer than was necessary to effectuate *any* of Andrzejewski's alleged reasons for his actions (legitimate and not)—demonstrating that he did not conduct the stop efficiently or in the least intrusive way possible.  In the absence of facts suggesting some irregularity to justify the nature of the detention, the constitutional question and the unreasonableness of Andrzejewski's actions here are "beyond debate" for a reasonable officer in Andrzejewski's position.  *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 741).  This is not a close case, about which reasonable officers could differ.  The law as it stood at the time of the events

in question left no doubt that a person in possession of a firearm and a facially valid permit for that firearm had a clearly established right to be free from the kind of forcible and prolonged detention to which Soukaneh was subjected, absent any objective reason to suspect that the permit was forged or otherwise invalid.

For those reasons, we hold that Andrzejewski's alleged conduct violated Soukaneh's constitutional rights where the detention constituted a *de facto* arrest without probable cause, and where case law from the Supreme Court and this Circuit clearly established Soukaneh's right to be free from such a detention under the circumstances. We therefore affirm the judgment of the district court to deny Andrzejewski's motion for summary judgment and decline to find that Andrzejewski has qualified immunity as to his detention of Soukaneh.

### B.   The Searches of Soukaneh's Vehicle and Trunk

Andrzejewski argues that there was no constitutional violation as to his search of the interior of Soukaneh's car because it was a lawful *Terry* frisk of a car. He further argues that the warrantless search of Soukaneh's trunk was lawful under the automobile exception to the warrant requirement. However, we reject Andrzejewski's contentions that either of these searches were justified and that they did not violate clearly established rights. We address each of Andrzejewski's

35

arguments in turn.

### 1.

In addition to being necessary for Soukaneh's *de facto* arrest,[11] probable cause was also needed for the warrantless searches of his car. *See Collins v. Virginia*, 584 U.S. 586, 592 (2018). As discussed above, no such probable cause existed. However, another inquiry for determining the lawfulness of a vehicle search during a traffic stop is whether an officer had a reasonable apprehension of danger—which may permit a *Terry* frisk of the automobile.[12] *See Michigan v. Long*, 463 U.S. 1032, 1047 (1983) ("When the officer has a reasonable belief that the individual whose *suspicious behavior* he is investigating at close range is armed *and*

---

[11] Because Soukaneh was not lawfully arrested, the district court was correct to conclude that Andrzejewski's search of the interior of the car cannot be considered a lawful search incident to an arrest. *Soukaneh*, 2021 WL 3475700, at *5; *see Arizona v. Gant*, 556 U.S. 332, 343–44 (2009) (concluding that a vehicle search incident to lawful arrest is justified "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," and that at times, "the offense of arrest will supply a basis for searching . . . an arrestee's vehicle" (internal quotation marks omitted)).

[12] A *Terry* frisk of a car is a limited search for weapons, without a warrant and without probable cause, when there is a reasonable apprehension of danger in connection with a *Terry* stop—a lawful custodial interrogation that does not rise to the level of an arrest. *See Terry*, 392 U.S. at 29; *see also Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990) ("Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk [of persons or areas] for weapons can be conducted.").

*presently dangerous* to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (emphasis added) (internal quotation marks omitted)).

Andrzejewski argues that the Supreme Court's holding in *Michigan v. Long* precludes us from finding that he violated Soukaneh's constitutional rights when he searched the interior of Soukaneh's car because of the known presence of the gun. However, a straightforward analysis of *Long* leads us to conclude that this is not correct—the presence of a lawful weapon alone does not automatically make someone suspicious, nor a situation dangerous, such as would justify the *Terry* frisk of a car.

Unlike here, in *Michigan v. Long,* the officers had a reasonable apprehension of danger, based not just on the presence of a weapon, but rather on the discovery of an undisclosed weapon within the driver's reach and the driver's uncooperative behavior. *See* 463 U.S. at 1049–50. After driving erratically, swerving his vehicle into a ditch, and being stopped by the police, the driver was unresponsive to the officers' requests for his license and registration—which indicated to them that he might have been under the influence of alcohol or drugs. *Id.* at 1035–36. The

officers "observed a large hunting knife on the floorboard of the driver's side of the car" through an open door of the vehicle. *Id.* at 1036. At that point, the officers pursued a *Terry* frisk of the driver and the vehicle, "restricted to those areas to which Long would generally have immediate control, and that could contain a weapon." *Id.* at 1050.

On those facts, the Supreme Court held that:

the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible *if* the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous *and* that the suspect may gain immediate control of weapons.

*Id.* at 1049 (emphasis added) (quoting *Terry*, 392 U.S. at 21). In other words, *Long* held that a *Terry* vehicle frisk can be lawful when the police officer reasonably believes on the basis of specific and articulable facts that the suspect (1) is dangerous, and (2) may gain immediate control of weapons.

On the facts before us, the requirements in *Long* are not satisfied. Indeed, the only overlap in facts between the two cases is the presence of a weapon, and *Long* certainly does not stand for the proposition that the presence of a weapon alone—regardless of the surrounding circumstances—can give rise to a reasonable

38

apprehension of danger that would justify a full search of a car.

Andrzejewski did not have a reasonable belief that Soukaneh was dangerous, because a traffic infraction—even one with the presence of a lawfully possessed weapon—without more, is insufficient to satisfy the dangerousness element of *Long*. In *United States v. Hussain*, 835 F.3d 307, 315 (2d Cir. 2016), we held that a stop for a traffic violation did not justify a vehicle search, even though the driver was significantly non-compliant. In *Hussain*, after the police pulled over the driver, the driver was uncooperative, moved unnaturally towards his car console, and admitted to the police that he had a pocketknife. *Id.* at 310–11. After frisking the driver and finding the pocketknife, the police then searched his car and discovered a loaded gun. *Id.* at 311. This Court nevertheless held that despite the driver's suspicious conduct and initial noncompliance with police questioning, "the specific facts articulated by the officers fail[ed] to demonstrate that their fear of immediate danger was objectively reasonable so as to justify a full field-type search of [the driver's] car" after the pat down. *Id.* at 314–15. The circumstances in Soukaneh's case are even less supportive of a reasonable perception of danger to justify a full search of the vehicle than what was rejected in *Hussain*, given Soukaneh's voluntary disclosure of the firearm and presentation of a facially valid

firearms permit, as well as the absence of any suspicious behavior.

Thus, since Andrzejewski had no reason to believe there was anything illegitimate about the permit or the weapon, and since Soukaneh had not otherwise acted suspiciously, Andrzejewski had no reason to prolong the stop further to check the validity of the facially proper gun license and no basis to think that Soukaneh presented any danger. Moreover, even assuming that Andrzejewski could detain Soukaneh briefly to run the permit check, that would at most justify simply moving Soukaneh away from the car so that he did not have ready access to the gun. There was certainly no reasonable suspicion to believe that the car contained any other weapon or contraband on these facts so as to justify a search of the vehicle.

**2.**

Andrzejewski attempts to justify the search of the trunk by arguing that the recovery of Soukaneh's lawful gun provided probable cause to search the trunk for other guns under the automobile exception. That justification fails.

"Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other

evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (citing

*Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)). But the "scope of a warrantless

search" justified by the automobile exception "is defined by the object of the search

and the places in which there is probable cause to believe that it may be found."

*California v. Acevedo*, 500 U.S. 565, 579–80 (1991) (quoting *United States v. Ross*, 456

U.S. 798, 824 (1982)). That is to say that the automobile exception does not give

carte blanche to search any place in a car—it authorizes a search *only for the subject*

of the search and *only in the areas* the officer has probable cause to believe

contraband or evidence of a crime exists. *See, e.g., id.* ("Probable cause to believe

that a container placed in the trunk of a taxi contains contraband or evidence does

not justify a search of the entire cab." (quoting *Ross*, 456 U.S. at 824)).

The recovery of Soukaneh's lawful gun did not justify the warrantless

intrusion into the trunk. Andrzejewski argues that once he retrieved the gun

identified by Soukaneh in the *driver's side door compartment*, he had the requisite

probable cause to search the *trunk* for contraband. But the presence or retrieval of

the lawful firearm could not, and did not, provide probable cause to search for

contraband in the trunk, absent indicators of criminal activity. Andrzejewski

attempts to justify his actions by relying on cases in which the discovery of

41

contraband (*e.g.*, the discovery of drugs) provided a foundation for probable cause for a warrantless search under the automobile exception. But a lawfully owned gun is not *per se* contraband. Andrzejewski provides no other basis for suspicion that the trunk contained illegal weapons, or any evidence to suggest a crime was afoot to justify his separate intrusion into the trunk.

For those reasons, Andrzejewski lacked the requisite arguable probable cause to conduct a warrantless search of the interior of Soukaneh's car, and separately, his trunk.

**3.**

Last, we address whether Andrzejewski's warrantless searches of Soukaneh's car and trunk violated clearly established Fourth Amendment rights to be free from unreasonable searches. We hold that they did. The case law from the Supreme Court and from this Court set forth in the preceding sections clearly established, as of the time of Andrzejewski's stop of Soukaneh, (1) that a reasonable apprehension of danger is necessary to establish reasonable suspicion warranting a *Terry* frisk of a vehicle subsequent to a car stop, and (2) that *probable cause* that evidence of a crime will be found is necessary to justify a warrantless search of a vehicle pursuant to the automobile exception.

42

*Long* itself clearly establishes the right to be free from *Terry* frisks of an automobile absent reasonable suspicion that someone is dangerous and may access a weapon. *See McCardle v. Haddad*, 131 F.3d 43, 49 (2d Cir. 1997) ("[T]he *Michigan v. Long* Court made it clear that to validate a protective 'area search' incident to a *Terry* stop, the officer 'must have an articulable suspicion that the suspect is potentially dangerous.'" (quoting *Long*, 463 U.S. at 1052 n.16)). And we recently acknowledged this same principle—that the dangerousness sufficient to support a warrantless search of an entire vehicle during a stop requires more than the mere presence of a weapon—in *Hussain*. *See* 835 F.3d at 316–17. There, we held that Hussain's suspicious conduct, initial noncompliance, and presence of a pocketknife, did not justify a full protective search of the vehicle based on immediate danger to the officers, in part because Hussain "readily volunteered" the presence of the knife when asked whether there were any weapons in the vehicle. *Id.*

The Supreme Court has also clearly articulated that an officer's concern for safety does not provide an unlimited justification for, or scope in, conducting warrantless vehicular searches during a *Terry* stop. In *Knowles v. Iowa*, the Court concluded that the officer's search of the driver's vehicle after issuing a traffic

43

citation was not permissible because "while the concern for officer safety [during a routine traffic stop] may justify the 'minimal' additional intrusion of ordering a driver and passengers out of the car, it does not by itself justify the often considerably greater intrusion attending a full field-type search"—as seen in this case. 525 U.S. at 117. Although the Court acknowledged that various circumstances could justify an expansion of a search, it also noted that each expansion of a search requires its own justification, and that "the [general] possibility that an officer would stumble onto evidence wholly unrelated to the [traffic-related] offense" was not grounds upon which a full field search "based on the concern for officer safety and destruction or loss of evidence" could proceed. *Id.* at 118–19. Accordingly, in the context of a *Terry* stop, the Court required that each additional intrusion in the vehicle be supported by reasonable suspicion of danger or probable cause for a crime (beyond the initial traffic crime or misdemeanor). *Id.* at 118–19. This adds further support to the clearly established right to be free from unreasonable vehicle searches during an officer's stop of an individual for a traffic violation—which permits minimal intrusion, but not the greater intrusion of a full field-type search.

*Long, Hussain,* and *Knowles* provide examples of the longstanding guidance

on the relevant factors that police officers must consider before they can engage in warrantless searches of vehicles incident to a traffic stop or arrest—*i.e.*, the stopped individual's dangerousness, their access to a weapon, the justification necessary to expand the scope of a warrantless search, etc. Those cases clearly establish that an intrusion on a person's Fourth Amendment rights must be necessary and must be tailored spatially and temporally to the specific facts confronting an officer. Moreover, an officer seeking to benefit from qualified immunity must be able to articulate why the privacy intrusion went only as far as permissible and necessary. Andrzejewski has provided no such explanation here.

Accordingly, we hold that Andrzejewski violated Soukaneh's constitutional rights when he searched the interior and trunk of Soukaneh's vehicle, and that case law from the Supreme Court and this Circuit clearly established Soukaneh's right to be free from an unreasonable search under the alleged circumstances. We therefore affirm the judgment of the district court denying Andrzejewski's motion for summary judgment on the basis of the lawfulness of the searches or of qualified immunity.

45

## IV.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court

and **REMAND** the case for further proceedings consistent with this opinion.